IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**TAIRE NELSON**                                                                     **PLAINTIFF**

v.                                                **CIVIL ACTION NO.: 5:14-cv-81-MTP**

**DANNY WHITE, ET AL.**                                        **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [52] filed by Defendants Scott Frye, Correll Singleton, Danny White and the Motion for Summary Judgment [56] filed by Defendant Charles R. Mayfield. Having considered the submissions of the parties and the applicable law the Court finds that the Defendant Charles R. Mayfield's Motion for Summary Judgment [56] should be granted and that Defendants Scott Frye, Correll Singleton, Danny White's Motion for Summary Judgment [52] should be granted in part and denied in part.

## BACKGROUND

On September 22, 2014, Plaintiff Taire Nelson, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint arise from his arrest and while he was a pre-trail detainee at the Natchez Police Department and Adams County Jail ("ACJ").[1] In his Complaint [1] and as clarified in his testimony at the *Spears*[2] hearing, Plaintiff asserts a claim against Defendant Correll Singleton for use of excessive force during arrest and claims against Defendants Scott Frye, Danny White, and Charles Mayfield for denial of adequate medical care.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on April 24, 2014, he was at a friend's house in Natchez, Mississippi, when Defendant Officer Singleton approached him, informed him he had a warrant for his arrest,

---

[1] Plaintiff is currently incarcerated at Concordia Parish Correctional Facility in Ferriday, Louisiana.
[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's Spears hearing took place on April 21, 2015.

1

and immediately shot him with a taser.[3] Plaintiff claims he was tased multiple times, which caused him to fall to the ground injuring his hand, leg, and back. (Omnibus Transcript [40] at 24.) He was then placed under arrest and was taken to the Natchez Police Department.

Plaintiff alleges that Officer Singleton's report only said he was tased three times when he actually tased him four times. Plaintiff alleges this violated police department policy. He claims that tasing him four times when he was already subdued was excessive force.

After being taken to the Natchez Police Department by Officer Singleton, Plaintiff alleges he was placed in a holding cell. Plaintiff claims he requested a sick call form, and Police Chief Danny White brought him a form and spoke to him about his injuries. According to Plaintiff, he informed Chief White that his leg was hurting but did not mention that his hand was hurting. Plaintiff claims Chief White gave him Tylenol and instructed him to submit the sick call form. According to Plaintiff, this was the only contact he had with Chief White.

Allegedly, a few days later, Plaintiff asked Kim Singleton[4] about the status of his sick call form. According to Plaintiff, Kim Singleton conferred with Captain Scott Frye, who stated that he would check on Plaintiff within three days. However, Frye allegedly did not check on him within three days. (Omnibus Transcript [40] at 21.) Instead, approximately a week and a half after Plaintiff was arrested, Kim Singleton allegedly removed Plaintiff out of his cell so that Captain Frye could see Plaintiff's hand. At that time, Captain Frye sent Plaintiff to Natchez Regional Hospital. According to Plaintiff, at the hospital, he was informed that he had a broken hand and needed surgery. Plaintiff alleges, however, that he was not taken back to the hospital for surgery.

---

[3] Plaintiff's testimony conflicted as to whether Officer Singleton tased him before or after informing him that there was a warrant for his arrest. Plaintiff initially claimed that Officer Singleton told him he had a warrant for uttering forgery before tasing him. (Omnibus Transcript [40] at 14-15.) He then claimed that Officer Singleton told him of the warrant after tasing him. *Id.* at 16.

[4] Originally, Plaintiff named Kim Singleton as a Defendant; however, the Court dismissed Kim Singleton after Plaintiff voluntarily moved to dismiss him. *See* Judgment [37].

Plaintiff alleges that on May 21, 2014, just few days after his hospital visit, he was transferred to the ACJ, where he submitted a sick call form. According to Plaintiff, he was provided Tylenol but no other treatment. Plaintiff named Sheriff Charles Mayfield as a Defendant, but Plaintiff alleges that he had no contact with Sheriff Mayfield during his stay at the ACJ.  Allegedly, on June 20, 2014, Plaintiff was transferred to the custody of the Mississippi Department of Corrections and taken to Central Mississippi Medical Center where a cast was placed on his hand. (Omnibus Transcript [40] at 29-30.)

Plaintiff seeks $100,000 in damages for his pain and suffering. Defendants filed their Motions for Summary Judgment [52][56], arguing that they are entitled to a judgment as a matter of law.

**STANDARD FOR SUMMARY JUDGMENT**

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.*  However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

There is no genuine issue for trial "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party." *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir.1999). The Fifth Circuit "assign[s] greater weight, even at the summary judgment stage, to the facts evident

from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183,187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)). A court need not rely on the plaintiff's description of the facts where the record discredits that description, but should instead consider "the facts in the light depicted by the videotape." *Id.* (citing *Harris*, 550 U.S. at 381).

## ANALYSIS

**Failure to Exhaust Administrative Remedies**

As an initial matter, Defendant Mayfield argues that Plaintiff failed to exhaust his administrative remedies while housed in the ACJ and the claims against him should be dismissed. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, Fed. App'x 752, 755(5th Cir. 2008)(citing *Days v. Johnson*, 322 F.3d 863, 866(5th Cir. 2003)).

ACJ has a grievance procedure in place as outlined in the prison rules. ([56-10]). The rules dictate that any inmate who believes he has not been treated correctly should fill out a grievance form located at the commissary terminal in each cellblock. *Id.* Shift Supervisors investigate the grievances once the form is filled out. *Id.* Plaintiff signed a document when transferring into ACJ jail stating that he would read these posted rules and follow them. ([56-12]). Plaintiff admits in his Complaint[1] that he did not utilize the administrative remedy program at ACJ because "jails don't have ARP complaint forms or procedure." However, Plaintiff's ignorance of the grievance procedure does not relieve him of the obligation to exhaust administrative remedies. *See Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) (holding that "ignorance of the law, even for an incarcerated pro se petitioner" did not excuse prompt filing of a *habeas* petition); *see also Plaisance v.*

4

*Cain*, 374 F. App'x 560, 561 (5th Cir. 2010) (per curiam) (prisoner's ignorance of the procedural aspects of the administrative remedy procedure for inmates did not relieve prisoner of obligation to exhaust that administrative remedy before filing a civil rights complaint). As Plaintiff failed to submit a grievance form at ACJ, Defendant Mayfield's Motion for Summary Judgment [56] should be granted. Nonetheless, the Court will discuss summary judgment based on the merits of Plaintiff's claim. As discussed below, Plaintiff's claims against all Defendants, except the excessive force claim against Defendant Singleton, should be dismissed with prejudice.

**Excessive Force - Officer Correll Singleton**

Plaintiff's allegations against Defendant Singleton amount to a Fourth Amendment excessive force claim. Qualified immunity protects public officials from this type of suit unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The defendant must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Bazan v. Hidalgo Cnty*, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendant has done this, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id.* A claim of qualified immunity requires the court to engage in a two-step analysis. The court determines whether the defendant has violated an actual constitutional right, *see McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), and if the answer is "no," the analysis ends. *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007). If the answer is "yes," then the court considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* at 411.

Prior to January 2009, this two-step process was a mandatory sequential analysis, meaning that courts were required to first analyze "step one"—the constitutional violation question—before moving to "step two." *Saucier v. Katz*, 533 U .S. 194, 200–01 (2001), overruled in part by *Pearson v.*

5

*Callahan*, 555 U.S. 223, 236 (2009). The mandatory nature of this sequential analysis was undermined in *Pearson v. Callahan*, in which the Court held that while courts may analyze qualified immunity by engaging in the *Saucier* "two-step" analysis described above, they are not required to do so and may skip the first question entirely and, instead, begin by determining whether the conduct was objectively reasonable under clearly established law. 555 U.S. 223, 236.

The right to be free from excessive force is clearly established. *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir.2012) (citing *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir.2009) (per curiam)). In order to state a claim under Section 1983 for excessive force, a plaintiff must allege facts showing that he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Peterson v. Fort Worth*, 588 F.3d 838, 846 (5th Cir.2009) (quoting *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir.2006)). When considering reasonableness in the context of excessive force, Fifth Circuit courts "pay 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.'" *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (internal alterations omitted).

In support of their Motion for Summary Judgment, Defendants submitted a video of the arrest.[5] Video of the arrest on April 24, 2014, begins with Plaintiff fleeing from Officer Singleton at their initial encounter. Defendant Singleton used his taser once Plaintiff began to flee. After the first taser charge, Plaintiff fell to the ground and attempted to remove the taser barb. Video at 0:01-0:06. Plaintiff then continued to try to get off the ground as Defendant Singleton ordered him to put his hands behind his back. Singleton then issued a second charge. *Id.* at 0:11-0:21. Next, Defendant

---

[5] *See* Docket Entry Dated February 11, 2016. A copy of the video on a Compact Disk was provided to the Court and the Plaintiff at the Omnibus hearing. *See* Omnibus Transcript [40] at 36, 41-42.

6

Singleton ordered Plaintiff not to move again, but Plaintiff again attempted to get up, this time towards Defendant Singleton. At this time, Defendant Singleton issued the third charge. *Id.* at 0:23-0:30. Defendant Singleton then ordered Plaintiff to roll on his stomach. Plaintiff began to comply, but then rolled back over, at which point Defendant Singleton issued the fourth and final charge and ordered Plaintiff not to move. *Id.* at 0:30-0:45. Defendant Singleton placed Plaintiff under arrest and transported him to the Natchez Police Department. Once at the police department, Plaintiff complained of a hurt leg, and it was later discovered that he had a fractured hand; however, it is not clear from the record if Plaintiff's hand was broken during the arrest or sometime before the arrest.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, the contents of the video do not blatantly contradict the version of events told by Plaintiff that no reasonable trier of fact could believe his version. The video submitted by the Defendants has missing portions, and it is unclear exactly what occurs during these timeframes. *See* Video at 0:06, 0:13. The video of the arrest clearly depicts Plaintiff fleeing Defendant Officer Singleton before Singleton fired the first taser. However, the video does not put the situation into context or demonstrate why a taser was necessary each time it was used; moreover, portions of the remainder of the video are unclear. A finding of fact is necessary to determine if the force used in this instance was excessive. *See Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013)(contents of a video were too uncertain to grant summary judgment).

Having considered the record, the Court finds that there is a genuine issue of material fact as to whether Defendant Singleton's use of force was excessive or objectively reasonable. The factual dispute in this case precludes a finding that a reasonable officer would have tased the Plaintiff under the circumstances because it is unclear whether the Plaintiff's actions warranted it. This is the kind of

issue that is best decided by the trier of fact. *See Mesa v. Prejean*, 543 F.3d 264 (5th Cir.2008) (issue of qualified immunity is a question of law, but where there are fact issues related to immunity, jury may decide question) and *Castellano v. Fragozo*, 311 F.3d 689, 704 (5th Cir.2002) (jury may resolve issue of qualified immunity if factual issues are in dispute), rev'd on other grounds, 352 F.3d 939 (5th Cir.2003). Therefore, summary judgment will be denied as to Defendant Singleton on the excessive force claim. [6]

**Denial of Adequate Medical Care - Police Chief Danny White and Captain Scott Frye**

Plaintiff's allegations against Defendants Police Chief Danny White and Captain Scott Frye amount to claims against them for the denial of adequate medical care. Plaintiff alleges that when he arrived at the Natchez Police Department, Danny White and Scott Frye were not responsive to his complaint of a hurt leg and fractured hand. The Eighth Amendment's prohibition of cruel and unusual punishment affords convicted inmates constitutional rights in connection with their medical care and safety. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). However, a pretrial detainee's right to medical care arises from the Fourteenth Amendment's guarantee of due process. *See Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). The Fifth Circuit "has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)). "When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights, regardless of whether the individual is a pretrial detainee or state inmate." *Gibbs*, 254 F.3d at 548.

---

[6] The court notes that Plaintiff argues in conjunction with his excessive force claim that Defendant Singleton did not file his report correctly. However, this claim is without merit. *See Gagne v. City of Galveston*, 671 F. Supp. 1130, 1133 (S.D. Tex. 1987) aff'd, 851 F.2d 359 (5th Cir. 1988)( "[I]t would be a perverse distortion of the law to establish constitutional liability for every mere breach of a departmental policy."); *see also Gagne*, 805 F.2d at 560 n. 2.

8

Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 965 (5th Cir. 2004) (quoting *Domino*, 239 F.3d at 756). Delay in medical care only violates the constitution if there has been deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The record demonstrates that Defendants White and Singleton were not deliberately indifferent to Plaintiff's serious medical needs. Plaintiff admits that when he first came into the Natchez Police Department, Chief White checked on him, provided him with Tylenol for his leg soreness, and gave him a sick call form. (Omnibus Transcript [40] at 16-17.) Plaintiff claims he did not complain to White about his injured hand.

Plaintiff allegations against Defendant White do not rise to the level of deliberate indifference. Plaintiff has submitted no evidence that White refused to treat him, ignored his complaints, or intentionally treated him incorrectly. *See Davidson*, 91 Fed. App'x at 965. White

checked on Plaintiff, gave him Tylenol, and gave him a sick call form; therefore, the claims against him should be dismissed. *See id.*

As to Defendant Captain Scott Frye, Plaintiff claims that he submitted a sick call and that Defendant Frye should have seen him within three days, as opposed to approximately a week and a half. (Omnibus Transcript [40] at 21.) However, this sick call form only complained of Plaintiff's leg pain, not his hand pain. [52-3]. Plaintiff's claim that Frye delayed his medical care approximately a week and a half – when the sick call form only mentioned his leg – is without merit. Plaintiff has submitted nothing to suggest Frye refused to treat him or ignored his complaints. *See Davidson*, 91 Fed. App'x at 965. In fact, Plaintiff was eventually taken to the hospital after meeting with Defendant Frye. (Omnibus Transcript [40] at 20.) However, even assuming a delay in medical care occurred, the Plaintiff must show that the alleged delay in treating him resulted in "substantial harm." *See Mendoza*, 989 F.2d at 193. Plaintiff has submitted no evidence that any alleged delay caused "substantial harm" to his leg.

The majority of Plaintiff's medical complaints stem from his hand injury. As outlined above, approximately a week and half after entering the jail, Frye met with Plaintiff. Plaintiff admits that as soon as he told Captain Frye that his hand was injured, he was taken to the emergency room "immediately that day." (Omnibus Transcript [40] at 20.) Because Defendant Frye did not know of Plaintiff's hand injury until Plaintiff told him about it, Plaintiff's claim that Defendant Frye delayed treatment for his hand fails. *See Thompson*, 245 F.3d at 383 (an official must **"know[] of** and disregard[] an excessive risk to inmate health or safety" to be deliberately indifferent)(emphasis added).

Plaintiff claims he was told at the hospital he needed surgery for his broken hand and that the Defendants Frye and White should have arranged for this. However, Plaintiff's medical records do not indicate that the proposed surgery for his hand was medically necessary for proper healing.

The medical records of Plaintiff hospital visit reflect that Plaintiff had a recent "fresh 4th proximal shaft" metacarpal fracture. [54-1] at 1. However, the proposed surgery was only "feasible" to correct "at least [two] "previous 5th [metacarpal fractures]" (pinky bone) that had already healed, causing Plaintiff's pinky to shorten. [54-1] at 2-3. Nothing suggests the surgery was immediately necessary for healing his current fracture or that any permanent damage would result if the surgery was not preformed. The surgery would only correct an injury Plaintiff sustained before his arrest or incarceration, not his fresh fracture.[7] A few days after this doctor visit, Plaintiff was transferred to ACJ.

      The record shows that when Defendant Frye was made aware of Plaintiff's hand injury he immediately took him to the hospital. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut inmates' allegations of deliberate indifference."). This demonstrates that Frye was not deliberately indifferent to Plaintiff's serious medical needs and that there was no delay in medical care. Additionally, Plaintiff's medical records indicate that failing to provide him with immediate surgery did not cause any short-term or long-term damage to his hand or that any alleged delay in treating him resulted in any "substantial harm." *See Mendoza,* 989 F.2d at 193. The record also indicates that Plaintiff was eventually given a cast while in MDOC custody. (Omnibus Transcript [40] at 30.) Moreover, Plaintiff was transferred to ACJ on approximately May 20, 2014, just days after his visit to the hospital on May 14, 2014, leaving no substantial time for either Frye or White to arrange for or deny Plaintiff hand surgery. *See id.* at 21; *see also* Medical Record [54-1] at 2. As neither Defendant

---

[7] Plaintiff's medical records referred to the surgery as "ORIF" for "open reduction and internal fixation." [54-1] at 3. "Open reduction and internal fixation (ORIF) is surgery to repair a broken bone. Open reduction means the doctor makes an incision (cut) to reach the bones and move them back into their normal position. Internal fixation means metal screws, plates, sutures, or rods are placed on the bone to keep it in place while it heals. The internal fixation [is not] removed." *See Open Reduction and Internal Fixation (ORIF), https://intermountainhealthcare.org/ext/Dcmnt?ncid=521402750.*

Frye nor White was deliberately indifferent to Plaintiff's serious medical needs, nor caused Plaintiff any substantial harm, the claims against them should be dismissed.

**Denial of Adequate Medical Care - Defendant Sheriff Charles Mayfield**

The Plaintiff claims that Sheriff Charles Mayfield denied or delayed his medical treatment. Plaintiff's claims against Defendant Mayfield fail for multiple reasons. First, Plaintiff admits that Defendant Mayfield had no contact with him while he was housed at ACJ. (Omnibus Transcript [40] at 27-29.) As Defendant Mayfield had no involvement with Plaintiff's medical care the claims against him should be dismissed. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) ("[I]ndividual liability under Section 1983 may not be predicated on the doctrine of *respondeat superior*," and "[o]nly the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under Section 1983."); *see also Stevens v. King*, No. CIVA 2:04CV200-KS-RHW, 2007 WL 2461967, at *3 (S.D. Miss. Aug. 27, 2007) ("With no evidence indicating that [Defendants] had any direct involvement in the treatment decisions at issue, there is no way a reasonable jury could find their actions violated the rights of [the plaintiff].")

Second, the medical records indicate that Plaintiff was given adequate medical care while at ACJ. Plaintiff alleges that he alerted ACJ officers to his condition upon his arrival on May 21, 2014. (Omnibus Transcript [40] at 3.) However, an inmate medical form shows that Plaintiff denied any serious medical conditions requiring attention upon being booked into ACJ on May 21, 2014. [56-8]. Plaintiff did inform ACJ employees of his medical conditions on May 23, 2014, and he saw a doctor the same day who prescribed him ibuprofen. *See Medical Records* [56-6] at 1, 6. The doctor's notes from May 23, 2014, reflect that the Plaintiff had sustained a fracture to his right metacarpal and that surgery may be required. *Id.* at 2. However, on May 30, 2014, the physician, after consulting with another doctor, noted it was determined that surgical intervention for the fracture was not necessary and that the Plaintiff would continue to be treated with anti-inflammatory medication. *Id.* On June

16, 2014, the Plaintiff submitted a sick call inquiring whether his prescribed medication would be continued. *Id.* at 6. On July 18, 2014, Plaintiff was prescribed 650 mg of Tylenol twice daily for ten days. *Id.* at 1. Plaintiff was transferred to MDOC custody two days later and eventually received a cast. (Omnibus Transcript [40] at 30.)

The record indicates that no one at ACJ was deliberately indifferent to Plaintiff's serious medical needs. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut inmates' allegations of deliberate indifference."). While Plaintiff may have wanted a surgery, disagreement with his treatment does not rise to the level of deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001) ("[D]isagreement with medical treatment does not state a claim for . . . indifference to medical needs."). Plaintiff was provided medication and seen by medical professionals while at ACJ. Moreover, even if there was a delay in medical treatment, Plaintiff's failure to show a substantial harm warrants dismissing the claim against Sheriff Charles Mayfield. *See Mendoza*, 989 F.2d at 193.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motions for Summary Judgment [56] should be granted, and that Defendants' Motion for Summary Judgment [52] should be granted in part and denied in part . Accordingly,

IT IS, THEREFORE, ORDERED that:

1.  Defendant's Motions for Summary Judgment [56] is GRANTED,

2.  Defendants' Motion for Summary Judgment [52] is GRANTED in part and DENIED in part,

3.  Summary Judgment is GRANTED as to Defendants Scott Frye, Danny White, and Charles R. Mayfield,

4.  Summary Judgment is DENIED as to Defendant Correll Singleton as to the claim of excessive force,

5.   Defendants Scott Frye, Danny White, and Charles R. Mayfield are dismissed with prejudice, and

6.   A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 9th day of March, 2016.

s/ Michael T. Parker<br>
United States Magistrate Judge